# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| C&K NuCo, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 4006 |
| | ) | |
| EXPEDITED FREIGHTWAYS, LLC, | ) | Judge Rebecca R. Pallmeyer |
| and CHAD ROSENBERG, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Until January 25, 2013, Defendants Expedited Freightways, LLC ("Expedited") and Chad Rosenberg were engaged in the business of providing trucking transportation services. On that day, Plaintiff C&K NuCo, LLC ("NuCo") agreed to purchase a portion of Expedited's assets. Three days later, on January 28, a truck driven by an independent contractor for Expedited was involved in a fatal vehicle accident. Plaintiff alleges that it faces liability for the wrongful death and other injuries related to the trucking accident. In this action, Plaintiff charges Defendants with breach of contract (Count I) and fraud (Counts IV–V), and claims indemnity for litigation costs arising from the accident. In addition, Plaintiff seeks to recover from Defendants payments for loads transported by Plaintiff after January 25, 2013 (Count I(e)).

Defendants have moved to dismiss, arguing that the indemnity issue is not ripe for review, that Plaintiff lacks standing to litigate liability for the accident, that Plaintiff has failed to state a claim for breach of contract, and that Plaintiff has failed to plead fraud with particularity as required under Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons discussed below, Defendants' motion to dismiss [45] is granted in part and denied in part: the court denies the motion to dismiss Count I(e) (breach of contract for failing to remit payments to Plaintiff) as against Defendant Expedited, but dismisses that claim with prejudice as against Defendant Rosenberg; Counts I(a)–(c) (failing to satisfy representations and warranties under

contract), and Count IV (fraudulent misrepresentation), Count V (fraudulent concealment), and Count VI (seeking equitable rescission), Count I(d) (breach of contract for failing to indemnify Plaintiff), Count II (seeking declaratory relief), and Count III (for indemnification) are dismissed without prejudice as against both Defendants.

## BACKGROUND

The following alleged facts are drawn from the Third Amended Complaint and attached exhibits, and are set forth in a light most favorable to Plaintiff.

### I.    Facts

Plaintiff NuCo was formed in order to acquire assets from Expedited, which was in the business of "intermodal drayage and trucking services." (Third Am. Compl. [42] ¶¶ 1, 3.) Defendant Rosenberg is beneficiary of a trust owned by Expedited (*id.* ¶ 5); the complaint does not state whether Rosenberg also played a business role with Expedited.

#### A.    The Asset Purchase Agreement

On January 25, 2013, NuCo, Expedited, Rosenberg, and C & K Trucking, LLC, not a party to this litigation, entered into an Asset Purchase Agreement ("APA"), in which Expedited agreed to sell NuCo assets including "customer lists, certain assigned contracts, independent contractor lease agreements with owner-operator drivers and qualification files and records related thereto, office equipment, supplies, and furniture, and goodwill." (Third Am. Compl. ¶ 32; *see* Asset Purchase Agreement, Ex. 1 to Third Am. Compl., hereinafter "APA," §§ 1.01; 7.05.)

Section 5.03 of the APA apportions the revenue flowing from the assets. It provides that Expedited is entitled to all revenue, and responsible for all expenses, "generated from . . . [and] related to, loads transported or delivered by its drivers through the Closing Date,[1]" and that NuCo is entitled to and responsible for like revenue and expenses after the Closing Date. (APA

---

[1]    Section 3.01 provides that the "Closing Date" and time is January 25, 2013 at 11:59:59 p.m. central standard time. (APA § 3.01.)

§ 5.03.)  Section 5.03 does not purport to resolve all questions regarding the parties' financial entitlement and obligations; instead, the parties "acknowledge[d] that certain deliveries may be split between services provided by both parties . . . ," "covenant[ed] to work in good faith to timely account for and properly direct payments owing to the other . . . ," and "covenant[ed] that all unified billing payments for split-move services shall be equitably adjusted among the parties . . . ." (*Id.*)  In Count I(e), Plaintiff alleges that the Defendants have refused to remit to NuCo amounts received for loads transported and delivered after January 25, 2013, in violation of this section, and that Defendants owe Plaintiff "at least $345,904.53" for these loads. (Third Am. Compl. ¶¶ 35–36, ¶ 54(e).)

Defendant Expedited also made certain "representations and warranties" in Section 4.01 of the APA, assuring that it was in compliance under the law and had not concealed material information:

> (g)    Compliance/Governmental Authorizations. Expedited has complied in all material respects with all material federal, state, local and foreign laws, regulations, ordinances, judgments, decrees, injunctions, writs and orders (collectively, "Laws") applicable to it and the Business, and no charges or, to Expedited's Knowledge, investigations have been made alleging failure to comply therewith. . . .
>
> . . .
>
> (j)    Labor Matters. . . . (iii) Expedited has complied with all laws, rules and regulations relating to the hiring and retention of all employees, leased employees and independent contractors relating to wages, hours, any employee benefit plans, workers' compensation, unemployment, equal opportunity, collective bargaining, and the payment of social security and other Taxes.
>
> . . .
>
> (l)    Misrepresentations. This Agreement and the schedules delivered pursuant hereto do not contain any untrue statement of a material fact or omit a material fact necessary in order to make the information or statements herein or therein not misleading in light of the circumstances in which they were made by Expedited. There is no fact which Expedited has not disclosed to C&K in writing which adversely affects Expedited's title and right in the Purchased Assets.

(APA § 4.01.)  In making these representations and warranties, Expedited's knowledge is defined as "exclusively the actual knowledge of the Rosenberg [sic] and Jim Briles, an officer of

Expedited, who would be reasonably expected to have knowledge regarding the accuracy of the fact or matter in question." (*Id.*)

Finally, in the APA, Expedited and Rosenberg agreed to indemnify NuCo for "any breach of any representation, warranty, covenant or agreement of Expedited or Rosenberg contained in this Agreement . . . " and for "Expedited's use and/or ownership of the Purchased Assets and the Business through the Closing Date." (APA § 6.01(a)(i)–(ii).) Section 6.02 limits that commitment, requiring Plaintiff's losses to exceed $25,000 before the indemnity obligation takes effect, and capping indemnification at $600,000, excluding fraud or intentional misrepresentation claims. (*Id.* § 6.02.) Section 6.03 outlines the indemnification procedure, and requires the seller (Defendants) to pay the cost of litigation against Plaintiff by third parties. (*Id.* § 6.03 (providing that any litigation covered in Section 6.01, the indemnity agreement, "shall . . . be defended . . . by the Indemnifying Party."); *see also id.* § 6.01.)

The Federal Motor Carrier Safety Administration approved the change in operating authority from Expedited to NuCo on January 30, 2013, effective February 4, 2013. (Third Am. Compl. ¶ 33.)

### B.    Affiliate Trucking and its Driver Arnold Williams

Among the "Purchased Assets" transferred to Plaintiff in the APA were contracts with independent contractors that performed trucking operations on the business's behalf. (APA § 1.01(c).) One of these contracts was an agreement dated September 20, 2012 between Expedited and Affiliate Trucking, an independent contractor fleet owner-operator. (Third Am. Compl. ¶ 10.) Around January 25, 2013, Plaintiff presented all independent contractors, including Affiliate Trucking, with a "Notice of Assignment and Consent," which explained that "as of January 26, 2013" the independent contractors' "contractual relationship with [Expedited] will officially end and [their] contractual relationship with [NuCo] will officially begin." (Third Am. Compl. ¶ 39; *see* Notice of Assignment & Consent, Ex. 5 to Third Am. Compl., hereinafter "Indep. K Notice.") The Notice directed the independent contractors to execute and return the

Notice to NuCo in order to ensure that their contracts "properly reflect[ed] the new contractual relationship," and announced that if the independent contractors failed to do so, then Expedited would "process [their] final settlement within 15 days from the date of [the] notice." (Indep. K Notice.)  By its terms, the Notice called for the independent contractors to consent to both the assignment of the contract and "the transfer of my qualification/driver file materials to Purchaser." (Indep. K Notice.)  Affiliate Trucking did not execute or return the Notice to NuCo. (Third Am. Compl. ¶ 41.)  As Plaintiff sees things, the independent contractors, who, like Affiliate Trucking, did not return the executed Notice, "provided no post-closing services" to NuCo. (*Id.* ¶ 42.)

One of the drivers employed by Affiliate Trucking is Arnold Williams. (Third Am. Compl. ¶ 11.)  As required by Department of Transportation ("DOT") regulations, Affiliate Trucking[2] administered random tests of its drivers for alcohol and controlled substances. *See* 49 C.F.R. § 382.305.  Plaintiff alleges, "[u]pon information and belief," that in November 2012, Williams failed the random test "because [his] blood alcohol content exceeded the legal limit at the time of the test." (Third Am. Compl. ¶ 12.)  Drivers who have failed testing for alcohol and controlled substances are prohibited from driving a commercial motor vehicle until the driver has completed an evaluation and treatment process. 49 C.F.R. §§ 40.285; 382.503.  Both the driver and his or her employer may be subject to criminal or civil penalties for failing to comply with DOT regulations concerning such testing. 49 C.F.R. § 382.507.  Plaintiff alleges, again on "information and belief," that Williams was not qualified to drive a commercial motor vehicle on January 25, 2013. (Third Am. Compl. ¶ 23.)  Plaintiff asserts, further, that Defendants "failed to disclose" and "concealed or otherwise [did] not ma[k]e" the results of Williams's test available to Plaintiff before the parties executed the APA on January 25, 2013. (*Id.* ¶ 13; *see also id.* ¶ 76

---

[2]     Although Plaintiff has not explicitly so alleged, the court presumes that it was Williams's employer, Affiliate Trucking, who performed the test.

("Defendants knowingly and intentionally concealed the fact that Williams failed an alcohol test in November 2012").) Either because Williams failed the alcohol and controlled substances test in November 2012 or because of his "conduct prior to, at, or after the January 28, 2013 accident," Plaintiff alleges that Defendants knew that certain representations and warranties that they made in the APA were false. (*Id.* ¶ 69.)

### C. January 28, 2013 Accident and Subsequent Litigation

On Friday, January 25, 2013, "Expedited dispatched a load" to Williams. (Third Am. Compl. ¶ 22.) Williams picked up the load before 4:00 p.m. on Friday, and "[u]pon information and belief" drove the load to his home for the weekend, about 4.2 miles from the load's final destination. (*Id.* ¶ 24.) Williams delivered the load on Monday, January 28, around 6:50 a.m. (*Id.* ¶ 26.) While returning the empty truck container after making the delivery, Williams was involved in an accident on I-526 in North Charleston, South Carolina. (*Id.* ¶ 27.) According to the Traffic Collision Report Form, vehicles were stalled on the highway, and Williams, "traveling too fast for conditions," was unable to brake in a timely manner. (*Id.* ¶¶ 27–28; *see* Traffic Collision Rep. Form, Ex. 2 to Third Am. Compl., hereinafter "Accident Rep.," at 1.) As a result, Williams collided with a motor vehicle in front of him, and caused a multiple vehicle accident, which killed Lauren Baccari. (*Id.* ¶¶ 28, 31; Accident Rep. at 1.) After the accident, Williams was observed disposing of beer cans, but a drug and alcohol test administered at a local hospital after the accident was negative. (Third Am. Compl. ¶¶ 29–30.) Williams was charged with reckless homicide. (*Id.* ¶ 30.)

Plaintiff maintains that Williams was acting as agent for Defendant Expedited at the time of the accident. Williams both picked up and transported the load, at Expedited's direction, before the closing on January 25, 2013. (Third Am. Compl. ¶ 38.) Furthermore, because Affiliate Trucking failed to execute and return the Notice, Plaintiff asserts that Williams, as Affiliate Trucking's employee, "was not operating as a driver on behalf of or under the authority of NuCo at the time of the January 28, 2013 accident." (*Id.* ¶ 42.) Rather, Plaintiff implies,

Williams remained an agent of Expedited via Affiliate Trucking. Plaintiff notes, again "[u]pon information and belief," that the door placard on Williams's truck contained DOT identifying information for Expedited. (*Id.* ¶ 25.) Finally, Plaintiff alleges, Defendant Expedited "expressly assumed . . . liability and responsibility [for the accident] pursuant to Section 5.03 of the [APA]." (*Id.* ¶ 60.)

Within two weeks after the accident, on February 12, 2013, Plaintiff received a notice of claim and a demand for preservation of evidence from Paul Dominick, an attorney representing the Estate of Lauren Baccari. (Third Am. Compl. ¶ 31; *see* Letter from Dominick to Expedited Freightways, LLC & Expedited Freightways, LLC – EFW of 2/12/13, Ex. 3 to Third Am. Compl.) In their motion to dismiss, Defendants advised the court that the insurance carrier for both Plaintiff NuCo and Defendant Expedited have agreed to a settlement with Baccari's Estate in a "covenant not to enforce a judgment." (Br. in Supp. of Defs.' Mot. to Dismiss [48], hereinafter "Defs.' Mot.," at 4 n.3.) Though Baccari's Estate may yet file suit against Plaintiff or Expedited, Defendants argue that because of the agreement "neither [NuCo] nor Expedited will have any liability beyond insurance coverage already paid." (*Id.*) Neither of the parties provided court with a copy of the settlement agreement, and Plaintiff has remained silent concerning the agreement, even after Defendants directed the court's attention to it in their motion to dismiss. Plaintiff filed this suit on May 30, 2013 (Compl. [1]), and the 9th Judicial District Court of Charleston County approved the settlement on November 6, 2013.[3] In this agreement, the

---

[3] The agreement can be located via a public case records search in Charleston County. (Visit http://jcmsweb.charlestoncounty.org/publicindex/?AspxAutoDetect CookieSupport=1; select case type "Common Pleas" and search for "Baccari.") *See* Order & Covenant Not to Enforce J., *Baccari v. FAF, Inc.*, No. 2013-CP-10-06182 (9th Jud. Cir. – S.C. Nov. 6, 2013), hereinafter "Baccari Estate Settlement," http://imgweb.charlestoncounty.org/ CMSOBView/Service1.asmx/StreamDocAsPDF?viewertype=cms&ctagency=10002&casenumb er=2013CP1006182&docseq=P1A4. Generally, the court, in considering a motion to dismiss, is limited to the complaint and central attachments referred to in the complaint. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). But here, the court may look beyond the pleadings to determine whether there is subject matter jurisdiction, and
(continued . . . )

Insurance Company of the State of Pennsylvania ("ICSP") agreed to pay Baccari's Estate $950,000 on behalf of both Plaintiff and Defendant Expedited (as well as other defendants). (Baccari Estate Settlement at 2–3.) In exchange, Baccari's Estate agreed, in the event that it sues Plaintiff or Defendant Expedited, to identify a liability insurance carrier (other than ISCP) from whom it may reasonably enforce judgment, and to not enforce any judgment against the personal, family or business assets of Plaintiff or Defendant Expedited. (Id. at 4–6.) Plaintiff also represented, in the agreement, that its only insurer that would cover the accident was ISCP (id. at 6), decreasing the likelihood that Plaintiff may be sued by the Baccari estate in the future. (Baccari Estate Settlement.)

Plaintiff alleges that it has incurred litigation costs and expects to incur additional expenses in relation to the January 28, 2013 accident. (Third Am. Compl. ¶ 48.) In opposition to Defendants' motion to dismiss, Plaintiff notified the court that it was served with a second notice of claim[4] on December 18, 2013 for alleged injuries from the January 28 accident. (Pl.'s Opp. to Defs.' Mot. [52], hereinafter "Pl.'s Opp.," at 8 n.2.)

## II.    Procedure

Plaintiff has invoked diversity jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, and it appears that Plaintiff is diverse in citizenship from both Defendants. Both Plaintiff and Defendant Expedited are limited liability companies, and

---

specifically whether the settlement agreement makes Plaintiff's claim for indemnification unripe for review, or altogether moot. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

[4]    A public records search indicates that the second claimant, Joseph William Hamilton III, has since filed suit. *See* Compl. in *Hamilton v. C&YK NuCo LLC*, No. 2014-CP-10-00724 (9th Jud. Cir. – S.C.) (filed Feb. 5, 2014), *available at* http://imgweb.charlestoncounty.org/CMSOBView/Service1.asmx/StreamDocAsPDF?viewertype=cms&ctagency=10002&casenumber=2014CP1000724&docseq=P1A1. The complaint alleges two negligence claims, and asserts that Hamilton suffered head trauma, a broken nose, and "deep and severe lacerations to his face" in the accident caused by Williams. (*Id.* ¶¶ 13, 19–23.) Like the covenant not to enforce judgment, the second suit is relevant to the court's subject matter jurisdiction, specifically, in considering whether Plaintiff's indemnification claim is ripe.

therefore, have the citizenship of each of its members. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2008). Plaintiff NuCo has single member, C & K Holdings Acquisition, LLC— itself another limited liability company with eight individual members "residing in" Illinois and Florida. (Third Am. Compl. ¶¶ 1–2.) Defendant Expedited also is a limited liability company with one member, EF Services, LLC, a limited liability company which Plaintiff alleges "[u]pon information and belief" has a single member—Defendant Rosenberg. (*Id.* ¶¶ 3–4.) "Upon information and belief," Plaintiff asserts, Defendant Rosenberg "resid[es]"[5] in Georgia. (*Id.* ¶ 5.)

On May 24, 2014, Plaintiff NuCo provided Defendants Expedited and Rosenberg with written notice of its potential liability for the January 28 accident. Defendants refused to indemnify NuCo. (Third Am. Compl. ¶¶ 49–50.) On May 30, 2013, Plaintiff filed this lawsuit raising claims for breach of contract and fraud, and seeking indemnification for the costs arising from the January 28 accident and rescission of the APA. (Compl. [1].)

## STANDARDS GOVERNING DEFENDANTS' MOTION

Defendants have moved to dismiss on grounds that the court lacks subject matter jurisdiction, that Plaintiff has failed to join an indispensable party, and that Plaintiff has failed to state a claim. (Defs.' Mot. [45] at 1) (citing FED. R. CIV. P. 9(b); 12(b)(1); 12(b)(6); 12(b)(7).) Before addressing those arguments, the court pauses to consider the standards governing them.

### I.    Rule 12(b)(1)

Article III § 2 of the United States Constitution "limits the exercise of the judicial power to 'cases' and 'controversies'." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239 (1937); *Wernsing v. Thompson*, 423 F.3d 732, 742–43 (7th Cir. 2005). Subject matter

---

[5]    Though "residence and citizenship are not synonyms and it is the latter that matters for the purpose of diversity jurisdiction," *Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir. 2002), for individuals, the terms are closely-related, and the court presumes that the parties are diverse. However, the court directs Plaintiff to file an amended complaint or joint stipulation, identifying all members of the LLC parties and their citizenship.

jurisdiction "defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (quotations and citations omitted). It "cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). Under the Declaratory Judgment Act, federal courts "may declare the rights and other legal relations of any interested party seeking declaration" where there is "a case of actual controversy within its jurisdiction," 28 U.S.C. § 2201(a), but the DJA "does not dispense with the Article III case or controversy requirement . . . nor does it supply the court with subject matter jurisdiction." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 691–92 (7th Cir. 1995); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).

Standing and ripeness are two justiciability requirements. A plaintiff has standing to sue when the plaintiff has suffered an "injury in fact" that is "fairly traceable" to the defendant, and that is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Ripeness requires the court to consider "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The requirement is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (quotations omitted), and as such, may be considered both as "part of the case-or-controversy requirement" and as a discretionary "question of timing." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)).

The appropriate vehicle for challenging standing or ripeness is a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). FED. R. CIV. P. 12(b)(1); *see Apex Digital.*, 572 F.3d at 443 (standing); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008) (ripeness); *but see Meridian Sec. Ins.*, 441 F.3d at 538 (characterizing ripeness as "'peculiarly a question of timing' rather than a limit on subject matter jurisdiction") (citation

omitted).  Similar to a 12(b)(6) motion, a facial challenge to subject matter jurisdiction under Rule 12(b)(1) requires that the court assume all well-pleaded factual allegations to be true.  *Apex Digital*, 572 F.3d at 443 (emphasis in original).  If the moving party denies or rebuts the facts alleged in the complaint, however, arguing that "the complaint is formally sufficient but . . . that there is *in fact* no subject matter jurisdiction" (a factual challenge), then the court may consider facts outside the complaint to determine whether there is subject matter jurisdiction.  *Id.* at 444 (emphasis in original) (quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds in Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012)).  "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946, *overruled on other grounds in Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).

## II.     Rule 12(b)(7)

A motion under Rule 12(b)(7) asks the court to dismiss the suit for failure to join a necessary party under Rule 19. FED. R. CIV. P. 12(b)(7).  As it does in considering a 12(b)(6) motion, the court accepts all well-pleaded allegations in the complaint as true, but also may consider extrinsic evidence. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001).  The moving party must demonstrate that, under Rule 19, the absent party is both necessary and indispensable. *See* FED. R. CIV. P. 19; *Ochs v. Hindman*, No. 13 C 3098, 2013 WL 6184452 at *2 (N.D. Ill. Nov. 25, 2013).

## III.    Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the sufficiency of the complaint's factual allegations.  FED. R. CIV. P. 12(b)(6).  The court assumes all well-pleaded factual allegations to be true.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  To survive a 12(b)(6) motion, the complaint need only contain sufficient facts to state a plausible claim, that is, "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2009)). Allegations of fraud must satisfy a heightened pleading standard, "stat[ing] with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

## IV.    Choice of Law

Finally, a federal court exercising diversity jurisdiction generally applies the choice of law principles of the jurisdiction in which it sits. *In re Jafari*, 569 F.3d 644, 647 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The court will apply Illinois' choice of law rules to each of the claims.

## DISCUSSION

Defendants move to dismiss Count I (breach of contract), and Counts IV–VI (fraud and equitable rescission) for failure to state a claim, Count II (declaratory judgment) for lack of standing, and Counts I(d) and III (indemnification) as unripe. The court addresses those arguments in reverse order, beginning with the question whether Plaintiff's indemnification claim is ripe.

## I.    Count III: Indemnification

In Count III, Plaintiff alleges that under Section 6 of the APA, Defendants are jointly and severally liable to Plaintiff for the costs of litigation arising from the January 28, 2013 accident "[w]hether or not a judgment or judgments are ultimately rendered against NuCo." (Third Am. Compl. ¶¶ 63–64.) Plaintiff seeks a declaratory judgment that Defendants must "indemnify and hold NuCo harmless" and must reimburse Plaintiff for "all of its attorneys' fees and costs [incurred] (or to be incurred) . . . and all expenses and other amounts incurred (or to be incurred) arising out of the January 28, 2013 accident" as provided in Sections 6.01 and 6.02 of the APA. (*Id.* ¶ 65.) Defendants contend that Plaintiff's indemnification claim is not ripe for

review because the underlying accident suit(s) have not been resolved. (Defs.' Mot. at 8–11.) The court agrees.

Under Illinois law, where the claims alleged arise from a contract with a choice-of-law provision, courts will honor the provision so long as the contract is valid. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996). The relevant contract provision here, Section 7.09, provides that the APA "shall be governed by and construed in accordance with the laws of the state of Illinois . . . ." (APA § 7.09.) Neither party challenges the choice of law provision or the validity of the APA. Plaintiff seeks indemnification under Section 6.01, in which Defendants agree to "jointly and severally . . . indemnify" Plaintiff NuCo for costs arising from or related to breach of certain representations and warranties, and Defendant "Expedited's use and/or ownership of the Purchased Assets and the Business through the Closing Date." (APA § 6.01(a)(i)–(ii).) The court will apply Illinois law to Plaintiff's indemnification claim.

Plaintiff has not explicitly asserted that Defendants have a duty to defend, though it suggests as much by insisting that the claim is ripe because Plaintiff has incurred and will continue to incur litigation costs. (*See* Third Am. Compl. ¶¶ 47–48, 50, 54(a), 56, 64.) Absent a claim that Defendants owe Plaintiff a duty to defend, however, this case is not ripe: a duty to defend requires the obligor to cover the costs of litigation once an action is filed, and regardless of the obligee's ultimate liability, while a promise to indemnify takes effect only after liability has been determined, and may or may not cover the costs of litigation. *See, e.g., Medline Industries, Inc. v. Ram Medical, Inc.*, 892 F. Supp. 2d 957, 964–65 (N.D. Ill. 2012).

What the APA does impose is a mutual indemnification requirement. In Section 6.01(a), Defendants agreed "to indemnify and hold [NuCo] . . . harmless from and against any out-of-pocket loss, liability, damage, assessment, or expense (including expenses of investigation and defense and reasonable fees and expenses of counsel) of any nature whatsoever . . . for or on account of or arising from or in connection with . . . " four categories of identified conduct or actions, including breach of representations in the APA and Expedited's "use/and or ownership

of the Purchased Assets" through January 25, 2013. (APA § 6.01(a).)  Likewise, in Section 6.01(b), Plaintiff agreed "to indemnify and hold Expedited . . . harmless from and against" the same losses identified in Section 6.01(a) "for, on account of, or arising from or in connection with . . ." two categories of conduct, including losses relating to "use and/or ownership of the Purchased Assets" after January 25, 2013. (APA § 6.01(b).)  The APA also appears to impose a duty to defend, as well, but only in circumstances in which the party on whom such a duty is imposed has agreed in writing that the indemnification provisions of Section 6.01 is triggered.[6] (APA § 6.03(b).)

The distinction between those duties is significant.  Under Illinois law, in the insurance context, a duty to defend arises where "the allegations in the complaint are even potentially within the scope of the policy's coverage." *Medmarc Cas. Ins. Co. v. Avent America, Inc.*, 612 F.3d 607, 613 (7th Cir. 2010).  In determining whether there is a duty to defend, "the court should not simply look to the particular legal theories pursued by the claimant, but must focus on the allegedly tortious conduct on which the lawsuit was based." *Medmarc Cas. Ins.*, 612 F.3d at 613 (internal quotations omitted).  In contrast, "[t]he duty to indemnify . . . will not be defined until the adjudication of the very action which [the indemnitor] should have defended." *Medline Industries, Inc.*, 892 F. Supp. 2d at 965 (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 127, 607 N.E.2d 1204, 1221 (1992)).  As a result, "the obligation to indemnify does not accrue until there has been an event that 'fixes' the liability of the indemnitee." *Medline Industries, Inc.*, 892 F. Supp. 2d at 965.

---

[6]    Section 6.03(b) states: "If any action, suit or proceeding is brought against the Indemnified Party with respect to which the Indemnifying Party may have liability under the indemnity agreement contained in Section 6.01, the action, suit or proceeding shall, under the written agreement of the Indemnifying Party that it is obligated to indemnify under the indemnity agreement contained in Section 6.01, be defended (including all proceedings on appeal or for review which counsel for the defendant shall reasonably deem appropriate) by the Indemnifying Party. . . ." (APA § 6.03(b).)

In light of the language of the APA, the "duty to defend" that either party owes to the other is dependent on the liability determination for the January 28 accident itself (or on an acknowledgement by one party that it bears that liability). The agreement therefore is better interpreted as imposing, at this stage, an indemnification obligation only. *See, e.g.*, *Medline Industries, Inc.*, 892 F. Supp. 2d at 964–65 (noting that the difference between the duties to defend and indemnify are, in part, a matter of timing, where the duty to indemnify does not take effect "until the adjudication of the very action which [the indemnitor] should have defended") (internal citations omitted).

The question whether Plaintiff's claim is ripe for review is an issue of both justiciability and judicial discretion, and "whether [the] dispute has reached the state at which declaratory judgment . . . is appropriate," which "is a question of federal practice." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). The doctrine of ripeness is "drawn from both the Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Courts ought not render decisions "'absent a genuine need" to do so, and should refrain from resolving "hypothetical, speculative, or illusory disputes . . . ." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (citations omitted). The ripeness inquiry is "more complicated" when, as in this case, a party is seeking preemptive declaratory relief. *Wis. Cent.*, 539 F.3d at 759. Yet "the question in each case," the Supreme Court has instructed, "is whether the facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The general rule is that "a declaratory judgment seeking indemnification rights is not ripe for adjudication until the underlying law suit has first determined and defined liability." *Lear Corp. v. Johnson Elec. Holdings*, No. 02 C 6704, 2003 WL 21254253 at *3 (N.D. Ill. June 2, 2003),

*aff'd* 353 F.3d 580 (7th Cir. 2003) (collecting cases). Defendants urge the court to apply that general rule here. (Defs.' Mot. at 8–9) (quoting *Lear Corp.*, No. 02 C 6704, 2003 WL 21254253 at *3.) Because the indemnity issue depends on the determination of the "actual facts" of underlying liability, Defendants note, it becomes ripe only after liability has been adjudicated. *See Doe v. City of Chicago*, 360 F.3d 667, 672–73 (7th Cir. 2004) (holding that the district court judge "had the power, but not the duty" to an enter indemnity judgment under Rule 54(b) because there was "just reason for delay," specifically "the need to develop a factual basis for determining how broad the City's . . . liability . . . should be").

Plaintiff here argues that this case falls into an exception to the general rule. (Pl.'s Opp. at 13–14) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680 (7th Cir. 1992) and distinguishing *Lear Corp.*, No. 02 C 6704, 2003 WL 21254253.) Plaintiff contends that Count III (and Count II)[7] is ripe for review because the court can decide the case by reference only to the APA's provisions, even without a liability determination concerning the Florida accident. (Pl.'s Opp. at 14–15.) Neither of the cases that Plaintiff cites, however, is factually similar to this one. In *Bankers Trust*, the plaintiff had made a loan in reliance on an appraisal. After the borrower defaulted, the bank sued the appraiser for negligence, and the appraiser's own excess insurance carrier sued, as well, seeking to rescind the excess insurance policy on the ground that the appraiser had not notified the carrier about the bank's lawsuit when it purchased the excess policy. 959 F.2d at 679-80. When the appraiser settled with the insurer for a sum well below the policy limit, *id.* at 680, the bank sued the insurer for a declaratory judgment that the insurer was required to indemnity the appraiser for the full policy amount. The

---

[7]     The parties disagree about what Plaintiff seeks in Count II; while Defendants argue that Count II seeks a declaratory judgment that Defendants (and not Plaintiff) are liable to the Baccari Estate for the January 28 accident, Plaintiff responds that in Count II, like Count III, it seeks indemnification from Defendants for costs related to the accident. To the extent that Plaintiff seeks indemnification in Count II, then, Plaintiff appears to admit that this count is duplicative of Count III. *See infra* Part II.

district court dismissed the bank's claim as unripe, but the Seventh Circuit reversed, holding that the *possibility* that that the bank might win a judgment in excess of the settlement was "relevant" only "to the district judge's exercise of equitable discretion to grant or withhold declaratory relief and to accelerate or retard his consideration of this suit in tandem with the [negligence] suit." 959 F.2d at 680–81. There remained "a real disagreement" concerning the validity of the insurance policy, so the district court had jurisdiction over the case, but, the Seventh Circuit noted, the district court retained discretion to determine "how swiftly to proceed with the case," including whether to "hold off resolving the dispute [between the bank and the insurer]until it is clearer that the dispute will not become moot." *Id.* at 682. In other circumstances, as well, the Seventh Circuit pointed out, a federal court may have jurisdiction over an indemnification-like claim even where future events might render it moot.[8]

In *Lear Corp.*, similarly, the district court acknowledged that it could have jurisdiction simply to interpret a contract in order to determine indemnity obligations: "("[I]f [plaintiff's] interpretation is correct that the contract governs notwithstanding the facts, then no liability determination in the [state court suit] would be necessary for this court to decide the indemnification issue . . . . *Lear Corp.*, No. 02 C 6704, 2003 WL 21254253 at **3–4. But the *Lear* court concluded that the indemnification provisions involved in that case "do[] not give the court the ability to determine indemnification rights based on the contract alone and regardless of the underlying facts," and the duty to indemnify (including "which of the two" defendants must indemnify, if at all) turns on resolution of liability in the underlying suit. *Id.* at *6. The Seventh Circuit affirmed. *Lear Corp.*, 353 F.3d at 585. The court did not address the distinction drawn by Lear Corp. (and relied on by Plaintiff here), which characterized the *Bankers Trust* exception

---

[8]        For example, "suppose that the day after the accident in which the victim was injured, and therefore long before he could feasibly bring a tort suit, let alone obtain a judgment, the insurer declared the liability insurance policy void; and suppose the insured had no other assets." *Id.* at 682. In those circumstances, the *victim* would have an interest in the insurance policy even if he might not ultimately prove his tort claim.

as applicable where the indemnification issue turns solely on contractual interpretation and is separate from underlying liability. Rather, the Seventh Circuit reasoned that determining indemnification obligations would become necessary only where the plaintiffs in the underlying suit successfully established that the assets it had purchased from defendant contributed to environmental contamination for which plaintiff had been sued, a scenario which the court noted "has an advisory quality." *Id.* at 583–84.

In this case, the court is not satisfied that Plaintiff's indemnification claim is ripe. Plaintiff's Third Amended Complaint referred to only one possible claim that could be asserted by the Baccari's Estate. No suit on that claim has yet been filed—and if it is, as Defendants point out, Plaintiff, Defendant Expedited, and the insurer for both have entered into an agreement with the Estate that protects both Plaintiff and Defendant from any personal liability, insulating Plaintiff from the cost of defense or a judgment. *See supra* note 3. Since the filing of this case, it appears that a second injury claim has been asserted, and that a lawsuit on that claim was filed on February 5, 2014. *See supra* note 4. Whether Plaintiff can assert a claim for indemnification in that lawsuit remains dependent, however, on whether Plaintiff or Defendants are liable (if at all) for the January 28 accident.

Plaintiff maintains that whether Defendants are obligated to indemnify Plaintiff for the costs related to the January 28 accident is a "purely contractual" issue, and thus ripe, "because Defendants' joint and several indemnity obligations under the express terms of the APA currently exist, and will continue to exist, *independent of liability* to the Baccari Estate." (Pl.'s Opp. at 14) (emphasis added.) Plaintiff analogizes this situation to *Bankers Trust*, where the Seventh Circuit acknowledged that a lawsuit seeking to establish the validity of the insurance policy could be deemed ripe, so long as the insurer's liability is not "intermingled with that of the liability of the insured and with the assessment of damages." 959 F.2d at 682 (citing *Reagor v. Travelers Ins. Co.*, 92 Ill. App. 3d 99, 103–04, 415 N.E.2d 512, 515 (Ill. App. 1st Dist. 1980). In this court's view, however, the case presented here is more like the situation descried in

*Reagor.*  Plaintiff seeks indemnification from Defendants for the cost of litigation for the January 28 accident allegedly arising from Defendants' breaches of representations and from "Expedited's use and/or ownership of the Purchased Assets and the Business through the Closing Date." (Pl.'s Opp. at 14–15) (quoting APA § 6.01(a)(i)–(ii).)  Some of these issues relate solely to the agreement between NuCo and Expedited (such as which of the two companies Williams was providing services for on the day of the accident); others relate to the liability of the trucking company for the accident itself (such as whether Williams' negligence caused the accident) and still others may never be at issue (such as whether Williams' failed controlled substance test means Defendant should have removed him as a driver).  The liability questions are intermingled here with the contract dispute.  At a minimum, it makes sense to delay resolution of Plaintiff's claim for indemnity in this case until there is a liability determination in any litigation brought by a victim of the accident.  The fact that, as Plaintiff emphasizes, it is incurring expense for the defense of that litigation does not change the analysis.  *(*Pl.'s Opp. at 14–15) (citing *City of Chicago v. Arvinmeritor, Inc.*, No. 05 C 6738, 2006 WL 3431910 at *5 (N.D. Ill. Nov. 28, 2006).)  The plaintiff made a similar argument in *Lear Corp.*, but the Seventh Circuit rejected it, noting that there was no duty to defend at issue, and plaintiff's argument was "just an effort to create a defense obligation through the back door." 353 F.3d at 584.  Plaintiff NuCo has not suggested that Expedited as a duty to defend it, and "no duty to defend means no duty to pay for the outlays of defense on a current basis." *Id.* at 584.

Count III is dismissed without prejudice.

## II.      Count II: Declaratory Judgment

Plaintiff's claim in Count II raises similar considerations, although they are presented differently.  In Count II, Plaintiff has alleged that "Defendants are primarily, fully, and directly liable to the [Baccari] estate" and seeks a declaration that "Defendants are jointly and several [sic] liable to NuCo for any and all damages, costs, expenses, or other amounts incurred (or to be incurred) arising out of the January 28, 2013 accident." (Third Am. Compl. ¶¶ 60–61.)

Defendants argue that Plaintiff does not have standing to litigate liability for the January 28 accident, as the real party in interest is the Baccari Estate. (Defs.' Mot. at 11–14.) Standing requires a showing that (1) the plaintiff has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'; (2) the injury must be "fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court;" and (3) "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (citations and quotations omitted). Defendants argue that Plaintiff fails to satisfy these requirements when adjudicating liability for the January 28 accident. They urge that Plaintiff NuCo did not suffer actual injury and is not the real party in interest because it has no legally protected interest in the life of the victim, Lauren Baccari, and that a favorable decision will not redress Plaintiff's injury because Baccari's Estate will not be bound by the decision unless it is joined as a party. (Defs.' Mot. at 12–13) (citing S.C. Code § 15-51-20, which permits only the deceased's executor or administrator to bring a wrongful death suit.) Plaintiff appears to acknowledge it has no standing to litigate Expedited's liability to victims of the January 28 accident, but argues that it does have standing to seek recovery for the costs of litigation arising from the accident. (Pl.'s Opp. at 16.) .

The parties' standing dispute, then, derives from different characterizations of the declaratory relief that Plaintiff is seeking in Count II. Defendants interpret Count II as a claim for a declaration of liability for the underlying accident. (Defs.' Reply at 8–10 (discussing complaint language that states that "Defendants are primarily, fully, and directly liable to the decedent's estate"); *see* Third Am. Compl. ¶ 60.) Plaintiff portrays Count II as a claim for a declaration of indemnity obligations. (Pl.'s Opp. at 12–18 (discussing Counts II and III together as indemnification claims, and asserting that it has standing to sue for indemnification).) Plaintiff identifies three circumstances that support its claim that Defendant is "liable" to Plaintiff for the January 28 accident: (1) Williams's truck door placard contained DOT information for Defendant

Expedited; (2) Expedited assumed liability for "all expenses related to, loads transported or delivered by its drivers through the Closing Date" in Section 5.03 of the APA; and (3) neither Williams nor his employer Affiliate Trucking executed the Notice of Assignment and Consent form sent by Plaintiff, and therefore, Williams was operating as a driver for Expedited on January 28. (Third Am. Compl. ¶ 60.)

These matters are relevant to the question of which of the two companies, NuCo or Expedited, is responsible for Williams's driving. Count II is, in effect, duplicative of Count III. Plaintiff is, of course, entitled to plead claims in the alternative, but to do so "must use a formulation from which it can be reasonably inferred that this is what [Plaintiff is] doing." FED. R. CIV. P. 8(d)(2); *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). The court has discretion to dismiss duplicative claims where they allege the same facts and the same injury. *Barrow v. Blouin*, No. 13-CV-8470, 2014 WL 1856835 at *2 (N.D. Ill. May 7, 2014); *F.D.I.C. v. Saphir*, No. 10 C 7009, 2011 WL 3876918 at *9 (N.D. Ill. Sept. 1, 2011) (citing *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)). In both Counts, Plaintiff has alleged that Defendants have an obligation to indemnify Plaintiff for the costs of the January 28 accident under the APA, and that Plaintiff has suffered injury because of Defendants' failure to do so. Count II is dismissed as duplicative of Count III.

### III.     Count I: Breach of Contract

All of Plaintiff's breach of contract claims, except for Count I(e), also appear to seek indemnification or to hold Defendants otherwise liable for the January 28 accident. First, Plaintiff alleges that Defendants "[f]ail[ed] to satisfy or meet the representations and warranties" provided in Section 4.01 of the APA when they (a) dispatched a load to Williams on January 25 after he had failed an alcohol and controlled substances test in violation of DOT regulations (Third Am. Compl. ¶ 54(a) (citing APA § 4.01(g)); (b) "fail[ed] to comply with all applicable laws in the retention, training, and supervision of their drivers," including Williams (*id.* ¶ 54(b) (citing APA § 4.01(j)(iii)); and (c) failed to disclose to NuCo that had Williams failed an alcohol and

controlled substances test. (*Id.* ¶ 54(c) (citing APA § 4.01(l).)    In paragraph 54(d), Plaintiff alleges explicitly that Defendants also breached Section 6.01 of the APA by refusing to indemnify NuCo for liability arising from the January 28 accident. (*Id.* ¶ 54(d).)    Finally, Plaintiff alleges that Defendants breached Section 5.03 by "[f]ailing to remit to NuCo funds collected and/or received with respect to loads transported and delivered after the Closing Date, or collected because customers misdirected payment for loads transported and delivered after the Closing Date." (*Id.* ¶ 54(e).)    Defendants move to dismiss Count I, arguing that Count I(d) is not ripe, and that Plaintiff has failed to state a claim for breach of contract. (Defs.' Mot. [45] at 2–4.)

Pursuant to Section 7.09 of the APA, Illinois law applies to Plaintiff's breach of contract claim.    In Illinois, to state a claim for breach of contract, Plaintiff must allege facts plausibly demonstrating: "(1) the existence of a valid, enforceable contract; (2) performance of the contract by the plaintiff; (3) a breach by the defendant; and (4) damages resulting from the breach." *Gore v. Ind. Ins. Co.*, 376 Ill. App. 3d 282, 286, 876 N.E.2d 156, 161 (Ill. App. 1st Dist. 2007).    Plaintiff has alleged sufficient facts to show that the APA is valid, and that Plaintiff performed on the agreement by purchasing substantially all of Expedited's assets in exchange for valuable consideration.    (Third Am. Compl. ¶ 32; APA §§ 1, 2.)    The court considers whether Plaintiff has alleged facts sufficient to state a breach.

## A.    Count I(d): Indemnification Provision (APA § 6.01)

Count I(d) seeks indemnification under the APA, and therefore, is duplicative of Count III.    Both allege that Defendants owe Plaintiff an indemnity obligation under the APA, which Defendants have failed to satisfy for the costs related to the accident, causing Plaintiff injury. This court has found the issue of indemnification is not ripe, and Count I(d) is duplicative of Count III.    Count I(d), too, is dismissed.    *See Barrow*, No. 13-CV-8470, 2014 WL 1856835 at *2; *Saphir*, No. 10 C 7009, 2011 WL 3876918 at *9.

**B.      Count I(e): Load Revenue Provision (APA § 5.03)**

Plaintiff states a claim for breach of contract in Count I(e) by alleging that Defendants failed to remit to Plaintiff amounts owed in violation of Section 5.03 of the APA.  The court notes that apart from a general challenge for failure to state a claim, Defendants do not specifically move to dismiss Count I(e).   Section 5.03 provides that Expedited is entitled to revenue generated from loads transported or delivered through January 25, 2013, and that Plaintiff is entitled to the same after January 25, 2013.  (APA § 5.03.)  Anticipating that "certain deliveries may be split between services provided by both parties," Plaintiff and Defendants agreed "to work in good faith to timely account for and properly direct payments owing to the other" and to "equitably adjust[]" revenues collected for split services.  (*Id.*)  Plaintiff alleges that Defendants have failed to direct payments to it in violation of this section, causing Plaintiff "at least $345,904.53" in damages.  (Third Am. Compl. ¶¶ 35–36.)  This is sufficient to state a claim for breach of contract.  Plaintiff's motion to dismiss is denied with respect to Count I(e).

**C.      Counts I(a)–(c): Representations and Warranties (APA § 4.01)**

The remaining three claims, Counts I(a)–(c), each allege that Defendants breached Section 4.01 by failing to disclose that Williams failed the alcohol and controlled substances test, and presumably, by continuing to employ him (through Affiliate Trucking) as a driver in violation of DOT regulations. (Third Am. Compl. ¶¶ 54(a)–(c).)   In Section 4.01, Defendant Expedited represented and warranted that: "Expedited has complied in all material respects with all material federal, state, local and foreign laws, regulations, ordinances . . . applicable to it and the Business . . ." (APA § 4.01(g)); "Expedited has complied with all laws, rules and regulations related to the hiring and retention of all employees, leased employees and independent contractors relating to wages, hours, any employee benefit plans, workers' compensation, unemployment, equal opportunity, collective bargaining, and the payment of social security and other Taxes" (APA § 4.01(j)(iii); and the APA (and other materials provided) "do not contain any

untrue statement of a material fact or omit a material fact necessary in order to make the information or statements herein or therein not misleading in light of the circumstances in which they were made by Expedited." (APA § 4.01(l).)

Section 4.01 defines Expedited's "knowledge" in making the representations and warranties as "exclusively the actual knowledge of the Rosenberg [sic] and Jim Briles, an officer of Expedited, who would be reasonably expected to have knowledge regarding the accuracy of the fact or matter in question." (APA § 4.01.) Section 4.01 explicitly provides that Defendant Rosenberg, on behalf of Defendant Expedited, had knowledge about the representations and warranties that Defendant Expedited made. Thus, to state a claim for breaching this section, Plaintiff must allege that Rosenberg knew that Williams failed the alcohol and controlled substances test, and/or that he remained employed as a driver for Affiliate Trucking in violation of DOT regulations. Defendants argue that Plaintiff has failed to allege knowledge (Defs.' Mot. at 20), and the court agrees.

Though knowledge may be pleaded generally, Plaintiff must at least plead sufficient facts that would "allow[] the court to draw the reasonable inference" that Defendants knew that Williams failed the alcohol and controlled substances test, and/or continued to employ him in violation of DOT regulations. *See Iqbal*, 556 U.S. at 678. In this case, Plaintiff alleges that Williams failed the "company-administered" alcohol and controlled substances test, and that "Defendants failed to disclose the results" to Plaintiff, but Plaintiff has not alleged that Defendants knew that Williams failed the test. (Third Am. Compl. ¶¶ 12–13.) In Count IV, a claim for fraudulent misrepresentation, similarly, Plaintiff alleges that that Defendants knew that they misrepresented and/or failed to disclose the failed alcohol and controlled substances test in the APA. (*Id.* ¶ 69.) But Defendants could only know that they were misrepresenting facts about their compliance with DOT regulations if they *also* knew that Williams had failed the controlled substances test, and Plaintiff only alleged the former. Finally, with respect to Count V for fraudulent concealment, Plaintiff alleges that "Defendants knowingly and intentionally

concealed the fact that Williams failed an alcohol test in November 2012" when they had a duty to disclose such information. (*Id.* ¶ 76.) Here, too, Plaintiff alleges that Defendants "knowingly" concealed a fact, but has not alleged that Defendants actually knew that Williams failed the test and remained employed. Plaintiff's assumption that Defendants knew that Williams failed the alcohol and controlled substances screening is insufficient to allege knowledge, as defined in Section 4.01.

Plaintiff correctly argues that a 12(b)(6) motion only tests the sufficiency of the complaint, and that it is entitled to the inference that the facts alleged in the complaint are true. (*Id.* at Pl.'s Opp. at 21–22.) Even the general pleading standard of Rule 8(b) does not save Plaintiff from dismissal, however, where it has simply failed to allege the necessary facts to plead a cause of action. *See Iqbal*, 556 U.S. at 678 (stating that a complaint still "*must contain sufficient factual matter*, accepted as true, to state a claim" and survive a motion to dismiss, and noting that "Rule 8 does not empower [the plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss") (emphasis added); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("The complaint must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level") (emphasis in original) (quotations and citation omitted).

Plaintiff contends its allegations of knowledge are adequate because the definition of knowledge in the APA includes facts or matters that Defendants "would be reasonably expected" to have. (Pl.'s Opp. at 23.; *see* APA § 4.01) (emphasis added.) The court is not at all certain Defendants could reasonably be expected to have knowledge of its independent contractors' testing activities. In any event, Plaintiff has not distinguished between Defendants' knowledge of the information represented and warranted in the APA (e.g. compliance with all applicable laws) and their knowledge that Williams had failed an alcohol and controlled substances test. Section 4.01's definition of knowledge includes only the former. That

Defendants could be expected to have knowledge that its own representations were accurate does not support the conclusion that Defendants also knew that Williams had failed an alcohol and controlled substances test and therefore should not have been employed as a driver of Affiliate Trucking.

Counts I(a)–(c) fail for another reason; Plaintiff has failed to allege that it was injured by Defendants' alleged breach of Section 4.01 (for failing to disclose the results of Williams' alcohol and controlled substances test, and for retaining him as a driver). The only harm Plaintiff allegedly suffered is the *possible* liability for the January 28 accident, to the extent that it rests on the driver's failure. If there is ultimately no liability attributed to the driver from the accident, Plaintiff has suffered no harm.

Because Plaintiff failed to allege facts showing Defendants' knowledge that Williams failed the alcohol and controlled substances test, and showing harm, Plaintiff cannot state a claim for breach of contract, and Counts I(a)–(c) are dismissed without prejudice.

## IV. Counts IV-VI: Fraud and Equitable Rescission

Finally, similar to Plaintiff's breach of contract claims, Plaintiff alleges that Defendants engaged in fraudulent misrepresentation (Count IV) and fraudulent concealment (Count V) when they affirmatively misrepresented and failed to disclose that Williams had failed the alcohol and controlled substances test, but nevertheless remained an employee of Affiliate Trucking. (Third Am. Compl. ¶¶ 66–81.) As a result, Plaintiff urges that it is entitled to rescind the APA. (*Id.* ¶¶ 82–88.) Defendants argue that Plaintiff failed to satisfy the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b). (Defs.' Mot. at 5–7.) Additionally, Defendants assert that Plaintiff's fraud claims suffer from the same failings as the breach of contract claims—Plaintiff failed to allege that Defendants knew that Williams failed the alcohol and controlled substances test and/or remained an employee of Affiliate Trucking, and therefore, cannot state a claim for fraud. (Defs.' Reply at 3 n.2, 4.)

Though the APA contains a choice-of-law provision, under Illinois law, the court must apply a two-part test to determine whether it also includes Plaintiffs' fraud claims. *Facility Wizard Software, Inc. v. Southeastern. Technical Servs., LLC*, 647 F. Supp. 2d 938, 943 (N.D. Ill. 2009). Under this approach, the court first must examine "the breadth and language of the choice-of-law provision to determine whether the parties intended the choice-of-law provision to govern all claims between them," and then, "determine whether the tort claims are dependent on the contract," considering whether "the claim alleges a wrong based on the construction and interpretation of the contract," whether "the tort claim is closely related to the parties' contractual relationship," or whether "the tort claim could not exist without the contract." *Facility Wizard*, 647 F. Supp. 2d at 943. If the tort claim is dependent on the contract, then the choice of law provision applies regardless of its scope. *Id.*

That is the case here. Section 7.09 of the APA provides: "This Agreement shall be governed by and construed in accordance with the laws of the state of Illinois, without regard to the conflicts of laws principals [sic] thereof. Any legal action or proceeding with respect to this Agreement shall be brought" in Illinois courts. (APA § 7.09.) Though the scope of the choice of law provision is ambiguous, Plaintiff's fraud claims depend on the APA—Plaintiff alleges not only that Defendants made fraudulent, affirmative misrepresentations in the APA, but also that Defendants did so in order to induce Plaintiff to enter into the agreement, and that Plaintiff relied Defendants' representations as material to discerning what assets to acquire in the agreement. (Third Am. Compl. ¶¶ 67–68, 70–71, 78); *see Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 863 (N.D. Ill. 2002) ("[F]or choice of law purposes, a fraudulent inducement claim is considered to be dependent upon the contract and, therefore, subject to the choice-of-law clause, where the allegedly fraudulent statements were made in the contract."). As a result, the court will apply Illinois law to Plaintiff's fraud claims.

To state a claim for fraudulent misrepresentation under Illinois law, Plaintiff must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it;

(3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (4) damage resulting from such reliance." *Doe v. Dilling*, 228 Ill. 2d 324, 342–43, 888 N.E.2d 24, 35–36 (2008). Similarly, to state a claim for fraudulent concealment under Illinois law, Plaintiff must allege that "the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 500, 675 N.E.2d 584, 593 (1996). The duty to disclose arises where there is a confidential or fiduciary relationship between the parties, or where the defendant is "in a position of influence and superiority over [the] plaintiff" because the plaintiff invests trust and confidence in the defendant. *Connick*, 174 Ill. 2d at 500, 675 N.E.2d at 593.

Plaintiff's claims for fraudulent misrepresentation and fraudulent concealment appear to be two sides of the same coin: Plaintiff alleges that Defendants affirmatively misrepresented, and failed to disclose, the fact that Williams, a driver for Affiliate Trucking, failed a company-administered alcohol and controlled substances test, and remained employed despite the results. Indeed, a claim for fraudulent misrepresentation may arise from an affirmative, misrepresentation or a failure to disclose when the party had a duty to disclose. *See, e.g. Gillespie Cmty. Unit Sch. Dist. No. 7, Macoupin Cnty. v. Wight & Co.*, 378 Ill. Dec. 438, 442, 4 N.E.3d 37, 41 n.1 (Ill. 2014). Such a claim must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) ("Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud . . . .") (citing *Herman & McLean v. Huddleston*, 459 U.S. 375, 387–89 (1983)). Finally, "rescission means the cancelling of a contract so as to restore the parties to their initial status," and is appropriate as a remedy where the plaintiff may show "substantial nonperformance or breach by the defendant" and "that the parties can be restored to the status quo *ante*." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 973, 926 N.E.2d 934, 942 (Ill. App. 1st Dist. 2010). "[S]ubstantial nonperformance or breach of contract

warrants rescission where the matter, in respect to which the failure of performance occurs, is of a nature and of such importance that the contract would not have been made without it." *Horwitz*, 399 Ill. App. 3d at 974, 926 N.E.2d at 942.

Defendants take issue, in large part, with Plaintiff's reliance on allegations made "upon information and belief." (Defs.' Mot. at 5–7; *see* Third Am. Compl. ¶ 12 ("*[u]pon information and belief*, in November 2012, Williams failed a company-administered random drug and alcohol test because Williams' blood alcohol content exceeded the legal limit at the time of the test") (emphasis added).) Plaintiff's fraud claim is insufficient, Defendants contend, because Plaintiff has pleaded the fact constituting the fraud, Williams's failed test, "upon information and belief," which is insufficient to satisfy the heightened pleading standard of Rule 9(b). (Defs.' Mot. at 5–6 (citing *Pirelli*, 631 F.3d at 442 ("[A] plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief."); Defs.' Reply at 2–3.) Plaintiff responds that it was only the date of the test (November 2012) and not the fact of Williams's failed test, that was alleged on information and belief. (Pl.'s Opp. at 12.) Moreover, Plaintiff asserts, the failed test did not "constitut[e] the fraud"; instead, the fraud consisted of Defendants' representation that Expedited was not in violation of the law (*see* APA §§ 4.01(g), (j)(iii)) and that the APA did not contain untrue statements of material fact or misrepresent material facts (*see id.* § 4.01(l).) (Pl.'s Opp. at 11–12) (quoting *Pirelli*, 631 F.3d at 442.) Finally, Plaintiff argues that its fraud allegation satisfies an exception to the general rule that fraud claims may not be pleaded upon information and belief because the information is "exclusively in the possession of third parties." (Pl.'s Opp. at 12); *see Pirelli*, 631 F.3d at 443 (fraud may be pleaded on information and belief where " (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the 'grounds for his suspicions'.") (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992)).

The court concludes that Plaintiff's fraud allegations suffer from the same failings as the breach of contract claims in Count I(a)–(c): Plaintiff has not alleged that Defendants knew that

Williams failed the alcohol and controlled substances screening, or that Plaintiff was harmed as a result. Though Plaintiff must satisfy Rule 9(b)'s heightened pleading standard in alleging fraud, Plaintiff need only generally allege Defendants' mental state. *See* FED. R. CIV. P. 9(b). That Plaintiff failed to satisfy even this standard for Counts I(a)–(c), compels the same result here. Absent an allegation that Defendants knew that Williams failed the test, Plaintiff has not pleaded facts sufficient to draw a reasonable inference that Defendants "knew or believed" that Defendant Expedited's representations to Plaintiff were false, or that they otherwise intended to defraud Plaintiff by concealing this material fact. Nor has Plaintiff alleged that it was harmed by Defendants' alleged misrepresentations or concealment. Again, the only alleged harm suffered is the *potential* liability for the January 28 accident. Plaintiff has failed to state a claim for fraud, and Counts IV, and V are dismissed without prejudice.

For the same reasons, the court is not satisfied that Plaintiff has pleaded a claim for equitable rescission. The only breach of contract claim Plaintiff has successfully alleged is Count I(e), which alleges that Defendants failed to remit payments that it received for loads transported or delivered after January 25, 2013 in violation of Section 5.03 of the APA. (*See supra* Section VII.B.) Plaintiff has not alleged that this act of nonperformance was so significant that it requires rescission. *See Horwitz*, 399 Ill. App. 3d at 974, 926 N.E.2d at 942. And because Counts I(a)–(c), IV, and VI, alleging reliance on Defendants' purported misrepresentations and concealment, are insufficient, Plaintiff has not alleged a "substantial breach." Count VI, for equitable rescission, is dismissed without prejudice.

## V.     Defendant Rosenberg

Finally, Defendants argue that Plaintiff failed to allege any claims against Rosenberg individually, or a claim to pierce the corporate veil for Count II, because, excluding the indemnification provision, "Rosenberg had no personal involvement in the facts" alleged. (Defs.' Mot. at 25–25; Defs.' Reply at 15.) Plaintiff disagrees, urging that Rosenberg is covered under the APA. (Pl.'s Opp. at 26) (citing APA § 6.01(a).)

Defendant Rosenberg is indeed a party to the APA, and Section 6.01(a) of the APA provides that "Expedited and Rosenberg . . . jointly and severally agree to indemnify and hold [NuCo] . . . harmless from and against any out-of-pocket loss . . . " for certain identified events. (APA § 6.01(a).)  Under the common law doctrine of joint and several liability, "when two or more individuals tortiously contribute to the same, indivisible injury, each individual may be held jointly and severally liable for the entire injury." *Woods v. Cole*, 181 Ill. 2d 512, 518, 693 N.E.2d 333, 336 (1998).  Such liability may arise out of contractual agreement, as here, and enable a tortfeasor to seek indemnification from another party. *See Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 254–55, 527 N.E.2d 1248, 1251 (1988).  To the extent that Plaintiff seeks indemnification under the APA from both Defendants, Plaintiff states a claim against Defendant Rosenberg pursuant to this Section, because Rosenberg individually is named as jointly and severally liable to Plaintiff for certain breaches of the APA. (*See* Third Am. Compl. Count I(d) (breach of § 6.01(a)); Count II (only insofar as this claim, like Count III, seeks indemnification, *see* Pl.'s Opp. at 16–18); Count III (indemnification).)

But, Plaintiff may not use the indemnification provision (Section 6.01) to bootstrap Rosenberg's liability for other breaches.  Plaintiff has failed to allege that Defendant Rosenberg is individually liable for breach of the representations and warranties made by Expedited (Counts I(a)–(c)), for failing to remit to Plaintiff amounts owed under Section 5.03 (Count I(e)), or for fraud (Counts IV–VI), nor has Plaintiff made allegations sufficient to pierce Expedited's corporate veil. *See, e.g. Peetoom v. Swanson*, 334 Ill. App. 3d 523, 526–27, 778 N.E.2d 291, 294–95 (2d Dist. – 2002) ("A corporation is a legal entity that exists separately and distinctly from its shareholders, officers, and directors, who are not generally liable for the corporation's debts. . . . Limited liability will ordinarily exist even though the corporation is closely held or has a single shareholder.").  To state a claim for breach of contract against Defendant Rosenberg, therefore, Plaintiff must allege facts that plausibly demonstrate that Rosenberg individually breached the APA. *See Gore*, 376 Ill. App. 3d at 286, 876 N.E.2d at 161.  Similarly, Plaintiff's

claims for fraudulent misrepresentation and concealment must allege that Rosenberg, individually, knew or believed the representations that made to be false, and either made affirmative misrepresentations or concealed the truth. *See Dilling*, 228 Ill. 2d at 342–43, 888 N.E.2d at 35–36 (fraudulent misrepresentation); *Connick*, 174 Ill. 2d at 500, 675 N.E.2d at 593 (fraudulent concealment).

The complaint does not meet this test. Representations and warranties outlined in Section 4.01 were made by Expedited alone. Section 4.01 is titled "Representations and Warranties of Expedited." (APA § 4.01.) Rosenberg is mentioned only in the Section's definition of knowledge, which provides that "Expedited's 'Knowledge' shall mean exclusively the actual knowledge of the Rosenberg [sic] and Jim Briles, an officer of Expedited, who would reasonably be expected to have knowledge regarding the accuracy of the fact or matter in question." (*Id.*) Other language confirms that the warranties are those of Expedited, not Rosenberg individually. (*Id.*) ("Expedited hereby warrants and represents to [NuCo] as follows."). Plaintiff's claims for fraud and equitable rescission, Counts IV–VI, rely on the same representations (and failure to disclose) made by Expedited in Section 4.01 of the APA, and as a result, similarly fail to allege that Rosenberg individually represented or failed to disclose information which he knew or believed to be false. (*See* Third Am. Compl. ¶¶ 67, 76, 78.)

Section 5.03, which Plaintiff alleges both Defendants breached in Count I(e), similarly excludes Rosenberg. This Section outlines the terms for apportioning revenue and expenses between Defendant Expedited and NuCo. (APA § 5.03.) Though the section does use the phrase "the parties," implying that it may cover all four parties to the agreement (NuCo, Expedited, C&K Trucking, and Rosenberg), a closer reading demonstrates that only Expedited and NuCo are understood as parties. (*See id.*) ("*The parties* acknowledge that certain deliveries may be split between services provided *by both parties*, and that such split-moves may be billed to *either Expedited* or *C&K . . . .*"; "*[T]he parties* acknowledge the possibility that *either party* may originally collect funds to which *the other* is entitled . . . ."; "*[T]he parties* covenant to work

in good faith to timely account for and properly direct payments *owing to the other*, and agree that any funds collected on behalf of the *other party* shall be held in trust in the interim until remitted to *the other party*.") (emphasis added.)  Rosenberg has no obligations under this Section.

To the extent that Plaintiff is able to state a claim, and recover on any of these claims from Defendant Expedited, Expedited may, under Section 6.01(a), choose to seek contribution from Rosenberg.  The court dismisses Counts I(a)–(c), (e) and Counts IV–VI against Rosenberg with prejudice.  Plaintiff alleges a cause of action against Rosenberg for Count I(d); Count II (indemnification only); and Count III,  but for reasons explained earlier, those counts have been dismissed.

**CONCLUSION**

Defendants' motion to dismiss [45] is granted in part and denied in part.  Count I(e) for breach of Section 5.03 of the Agreement survives as against Defendant Expedited only, and is dismissed with prejudice as against Defendant Rosenberg.  Defendants' motion to dismiss all other counts is granted, and all remaining counts are dismissed without prejudice.

ENTER:

Dated:  September 30, 2014

REBECCA R. PALLMEYER
United States District Judge