UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C&K NUCO, LLC, | ) |
| Plaintiff | ) |
| v. | ) No. 13 CV 4006 |
| EXPEDITED FREIGHTWAYS, LLC, | ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

After Expedited Freightways, LLC ("Expedited") sold its trucking business to C&K NuCo, LLC ("C&K") in 2013, disputes arose about certain post-closing payments and credits. This lawsuit resulted. Most of the parties' claims were resolved by way of summary judgment, but the court conducted a bench trial on one limited issue: whether the profit earned by C&K after the purchase supported an adjustment to the purchase price as provided in the parties' agreement, and specifically whether that determination should be based on the amount of revenue the parties had billed, or only the amounts they had actually collected. The court found in favor of Expedited on that issue and entered a judgment, after offsetting the revenues that each party owed the other for the post-closing period, but failed to pay. Both parties have moved to amend the judgment. For the reasons stated below, the motions are denied.

**BACKGROUND**

The facts of this case are set out in detail in the court's two prior opinions, *C&K NuCo, LLC v. Expedited Freightways, LLC*, No. 13 CV 04006, 2016 WL 3364766 (N.D. Ill. June 17, 2016), and *C&K NuCo, LLC v. Expedited Freightways, LLC*, No. 13 C 4006, 2014 WL 4913446 (N.D. Ill. Sept. 30, 2014), but are summarized again here. On January 25, 2013, C&K purchased substantially all of Expedited's assets. *C&K NuCo*, 2016 WL 3364766, at *1. Before the sale, Expedited was engaged in trucking services and transportation of goods through various states. *Id.* The asset purchase agreement ("APA") between C&K, C&K's parent

1

company (C&K Trucking, LLC), Expedited, and Chad Rosenburg (a principal of Expedited) provided for a purchase price of $825,000, plus an additional amount (the "Purchase Price Adjustment") payable to Expedited if C&K achieved a profit in excess of $400,000 during the first 100 days after the closing date ("Aggregate Direct Profit"). *Id.* at *2. The parties also agreed that Expedited would be entitled to revenues generated by loads transported before the closing date, while C&K would be entitled to revenues generated after the closing date (with each party responsible for the corresponding expenses) ("load revenue"). *Id.* at *3. Section 5.03 of the APA requires the parties to "work in good faith to timely account for and properly direct payments owing to the other" and directs that "any funds collected on behalf of the other party shall be held in trust in the interim until remitted to the other party."[1] *Id.* at *3 (quoting APA § 5.03).

On May 20, 2013, C&K filed this lawsuit against Expedited and Rosenburg, alleging breach of contract and fraud. C&K sought rescission of the contract and indemnification for costs arising from litigation involving a truck driver who transported a load post-closing.[2] *C&K NuCo*, 2014 WL 4913446, at *5. Relevant for this opinion, C&K alleged that Expedited breached the APA by failing to give C&K revenue that Expedited collected for loads transported after the closing. *C&K NuCo*, 2016 WL 3364766, at *5. Expedited counterclaimed, alleging that C&K itself breached the APA by (1) failing to remit to Expedited revenue associated with pre-closing loads, and (2) failing to give Expedited a Purchase Price Adjustment. *Id.*

---

[1] The APA also contains a number of other provisions relevant to certain of C&K's claims that were dismissed before trial. Those provisions are not relevant to this opinion.

[2] One of the assets that C&K purchased from Expedited was a transportation services agreement between Expedited and Affiliate Trucking, which operated a trucking fleet. *C&K NuCo*, 2016 WL 3364766, at *4. One of the drivers, Arnold Williams, was involved in an accident on January 28, 2013, just days after the closing date, while transporting a load under this agreement. *Id.* at *5. The facts surrounding this incident and C&K's causes of action arising from these facts are not relevant to this motion. *See id.* at *4–5, *7–11, *13.

2

On September 30, 2014, the court dismissed C&K's claims against Rosenburg with prejudice and most of those against Expedited without prejudice. *C&K NuCo*, 2014 WL 4913446, at *1. C&K then filed another amended complaint, alleging many of the same causes of action. *C&K NuCo*, 2016 WL 3364766, at *6. Among those is a claim that Expedited owes C&K $433,560.10 in revenue that was generated after closing. *Id.* at *2. The parties filed cross-motions for summary judgment on breach of contract claims arising out of post-closing revenue; Expedited also moved for summary judgment on its claim that C&K breached the APA by failing to pay a Purchase Price Adjustment, and moved to dismiss the other claims. *Id* at *6.

C&K's claim for post-closing revenue was contested, but only in part: Expedited admitted that it collected $356,839.50 in revenue from loads transported after the closing date, *id.* at *3, but it "dispute[d] $64,466.60, and [wa]s uncertain about $12,254." (Def.'s Resp. to Pl.'s Statement of Material Facts [129] ¶ 19.) C&K did not withdraw its claim for the full amount, but its motion for summary judgment requested only the $356,839.50 that Expedited acknowledged that it had received, post-closing. (Pl.'s Mot. for Summ. J. [121] at 2; Pl.'s Mem. in Supp. of Mot. for Summ. J. [122] at 2 n.3.)

Expedited's counterclaim sought recovery, first, of $128,602.28 in revenue that C&K admitted it had collected for loads transported before the closing date. *C&K NuCo*, 2016 WL 3364766, at *3, 5. In addition, Expedited claimed it is entitled to the Purchase Price Adjustment referred to in the parties' agreement. *Id.* at *5. In support of this claim, Expedited relied on C&K's own records showing that C&K had earnings of $464,622.15 in the 100 days following the closing. *Id.* at *2. In response to this claim, C&K took the position that because it had not yet recovered the $433,560.10 that Expedited owed it, C&K's actual profit did not exceed the $400,000 trigger for a Purchase Price Adjustment. (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. [111] at 3.)

On June 17, 2016, the court granted summary judgment on both Expedited's and C&K's claims that each party had breached the APA by withholding revenue owed to the other. *C&K*

*NuCo*, 2016 WL 3364766, at *11–12. The court held that Expedited was entitled to the $128,602.28 that C&K had collected, and that C&K was entitled to the $356,839.50 that Expedited admitted to collecting; the court did not address the disputed $76,720.60. *Id.* The court denied Expedited's request for summary judgment on the claim that C&K breached the APA by failing to pay a Purchase Price Adjustment. *Id.* at *12. The court noted that if Expedited collected $433,560.10 in post-closing revenue, as C&K itself contended, those funds would be payable to C&K, and C&K would owe a Purchase Price Adjustment. *Id.* On the other hand, if Expedited had collected only $356,839.50 post-closing, C&K's profits would not reach the $400,000 threshold.[3] *Id.* The court also granted Expedited's motion to dismiss the other breach of contract, fraud, and equitable rescission claims. *Id.* at *15.

On September 12, 2016, C&K moved for summary judgment a second time, asking the court to find that it did not owe a Purchase Price Adjustment. C&K argued "Expedited has no quantitative evidence to contradict the Court's calculation of C&K's Aggregate Direct Profit"—that is, the court's finding that C&K's profit in the first 100 days was less than $400,000, which was premised on the assumption that Expedited had only collected $356,839.50 that was due to C&K. (Mem. in Supp. of Pl.'s Mot. for Summ. J. on Count I of Def.'s Counterclaim ("Pl.'s Second Summ. J. Mem.") [147] at 8.) C&K added "[t]he record in this case is complete, and the Court has already analyzed that complete record in arriving at the findings in its Order. There are no new financial figures in the case." (*Id.*) C&K accordingly conceded that the $76,720.60 should not be included in the calculation of profits for the first 100 days:

> The difference between $433,560.10 ([C&K's] postclosing receivables calculation) and $356,839.50 (amount of post-closing receivables acknowledged by Expedited), or $76,720.60, *must* then be subtracted from [C&K's] calculation of 100-day revenues, $2,162,826.37, to arrive at revenues totaling $2,086,105.77 for the 100-day period following the Closing Date. (Order at p. 23 and n. 10). After subtracting [C&K's] costs of $1,698,204.22, [C&K's] Aggregate Direct Profit totaled $387,901.55[.]

---

[3] The court also noted that the revenue from Williams's delivery was unaccounted for. *C&K NuCo*, 2016 WL 3364766, at *12.

4

(*Id.* at 9 (emphasis added).) In essence, by arguing that C&K's profits fell below the $400,000 threshold, C&K effectively abandoned its contention that Expedited had recovered an additional $76,720.60 payable to C&K. Expedited responded by arguing that C&K had underreported its profit by deducting uncollected revenue from the profit calculation. (*See* Def.'s Mem. in Op.. to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross Mot. for Summ. J. [150] at 7.) This was improper, Expedited argued; it contended that profit should be calculated on the basis of billed revenue, regardless of whether it had been collected. (*Id.* at 7–9.) If all billed revenue were included, C&K earned Aggregate Direct Profit of $464,622.15, and therefore owed a Purchase Price Adjustment.

The court thus distilled the remaining issue as follows: whether Aggregate Direct Profit should be calculated using billed revenue or collected revenue. (Minute Entry [152], Sept. 22, 2016.) The court noted that this could not be resolved on summary judgment, and set the issue for trial. (*Id.*) The parties submitted a joint proposed pretrial order, in which C&K contended that there were two issues for trial: "whether the term 'net revenue' in the Asset Purchase Agreement refers to 'billed revenue' or 'collected revenue'; and whether Plaintiff diverted revenue pursuant to the Asset Purchase Agreement." (Joint Proposed Pretrial Order [153].) The parties' stipulation of uncontested facts stated that "Expedited admitted owing C&K $356,839.50 in post-closing receivables, but represents that it disputes owing $64,466.60, and does not know about $12,254.00." (Sch. A to Joint Proposed Pretrial Order [153] ¶ 20.)

At trial, the parties jointly offered in evidence C&K's initial calculation of the Aggregate Direct Profit, which shows an Aggregate Direct Profit of $464,622.15, and a corresponding Purchase Price Adjustment of $329,107.36. (Trial Joint Ex. 2; *see* Ex. D to Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. [111-4].) But consistent with C&K's argument in its second summary judgment motion, Michael Burton, the president of C&K's parent company, testified that this calculation of C&K's Aggregate Direct Profit was inflated because it included amounts of post-

5

closing revenue that Expedited denied having received. (Trial Tr. vol. 1, 123:24–124:8, 125:23–126:2, 139:13–140:4.) At closing argument, C&K argued that "Expedited found that it could not determine the collectability of $76,720.60 of those post-closing receivables. And that's what this Court found also in its June 17th, 2016 opinion and order. That's what the parties have stipulated to for this trial." (Trial Tr. vol. 2, 251:11–15.) C&K did not present evidence that Expedited had actually received this disputed revenue.

After hearing evidence, the court rejected C&K's contention, and concluded that whether the Aggregate Direct Profit payable to C&K exceeded $400,000 must be calculated on the basis of billed revenue, not collected revenue. Resting this determination on collected revenue would, in the court's determination, be (1) "inconsistent with reasonable business judgment, as it would permit unilateral manipulation" by the parties and (2) "inconsistent with the parties' course of dealing," given that C&K made no mention of collection in its initial calculation of the Purchase Price Adjustment. (Order [165] at 1–2, Dec. 15, 2016.) As a result, the court concluded that "(a) Expedited proved by a preponderance of the evidence its claim for Breach of Contract against C&K; and, as a result (b) Expedited is entitled to a purchase price adjustment from C&K . . . in the amount of $329,107.36." (*Id.* at 2.) The court added the additional $128,608.28 in load revenue that C&K owed Expedited, for a total recovery to Expedited of $457,715.64. (*Id.*) But, the court noted that this recovery must be reduced by the post-closing revenue that Expedited owed to C&K: $356,839.50. (*Id.*) Accordingly, the court entered judgment in the amount of the net recovery to Expedited: $100,876.14. (*Id.*; Judgment [166], Dec. 15, 2016.)

Both parties have moved to amend the judgment under Federal Rules of Civil Procedure 52(b) and 59(e). C&K seeks to reduce the amount of the judgment by $74,928.60, and also seeks pre-judgment interest under 815 ILCS 205/2 on the post-closing revenue that Expedited collected, which offset Expedited's award. Expedited also seeks pre-judgment interest.

6

**DISCUSSION**

A court may grant a motion under Rule 59(e) when the movant establishes a manifest error of law or fact, or presents newly discovered evidence. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). But "it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Id.* (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996)). Instead, such motion should be granted only when there is a significant change in the law or facts, or "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal citation and quotation marks omitted).

**I.    Alleged $74,928.60 Collected by Expedited**

C&K seeks to amend the judgment to recover the amounts that it claims Expedited collected, but Expedited either disputed or was "uncertain" about. Specifically, of the $76,720.60[4] that C&K had alleged Expedited failed to acknowledge, C&K now claims that it has "determined that at least $74,928.60 of [these payments] were, in fact, received by Expedited." (C&K's Mem. in Supp. of Mot. to Alter or Amend J. ("C&K Mem.") [168] at 4.) In support, C&K cites an affidavit from James Hardy, the Chief Financial Officer of C&K and C&K's parent company. (Aff. of James Hardy ("Hardy Aff."), Ex. 1 to C&K Mem. [168-1] ¶ 2.) Hardy attached documents to his affidavit purporting to show that Expedited received payments totaling $74,928.60 and owes this amount to C&K. (Hardy Aff. ¶ 11; *see* Ex. C & D to Hardy Aff.) Now that the court has determined that Aggregate Direct Profit is calculated on the basis of billed revenue, C&K argues, this $74,928.60 was included in the court's calculation of the Purchase

---

[4] C&K's brief gives this amount as $76,720.69 (and states that Expedited disputed $64,466.69, as opposed to $64,466.60). (C&K's Mem. in Supp. of Mot. to Alter or Amend J. [168] at 4.) Given that C&K has used $76,720.60 throughout this litigation, the court assumes this is a typographical error.

7

Price Adjustment and, because Expedited therefore reaped the benefit of counting this $74,928.60 as C&K's revenue, it would be "manifestly unjust" to allow Expedited to retain that post-closing revenue. (C&K Mem. 4.)

Expedited responds that C&K's claim is not appropriate for a Rule 59(e) motion, and that C&K waived these arguments by failing to raise them earlier. The court agrees. C&K's claim is not based on any new law, and C&K does not suggest that the court misunderstood any issue. Instead, C&K purports to introduce new evidence, and seeks different relief than it sought at trial. There is no indication that this evidence is newly-discovered or previously unavailable. This is not an appropriate issue for a Rule 59(e) motion.

Furthermore, C&K had the opportunity to raise this issue earlier. In the joint proposed pretrial order, C&K did not list this as one of the remaining issues to be resolved. Indeed, in its second summary judgment motion, C&K argued that it did not owe a Purchase Price Adjustment because Expedited had collected only $356,839.50 in post-closing revenue, putting its Aggregate Direct Profit below the $400,000 threshold. (Pl.'s Second Summ. J. Mem at 3–4.) C&K asserted that the record was complete and that "[t]here [we]re no new financial figures in the case[,]" indicating that there were no contested facts remaining. (*Id.* at 8.) It thus appeared that C&K had decided to stop pursuing these amounts (perhaps because if C&K collected them from Expedited, then it would owe a Purchase Price Adjustment even under its own theory).

In fact, C&K went further, claiming "[t]here is no quantitative evidence that [C&K] achieved the Direct Profit Minimum during the Adjustment Period." (Pl.'s Mot. for Leave to File a Mot. for Summ. J. Instanter [143] at 3–4.) C&K made this argument while claiming that only collected revenue should be considered when calculating the Aggregate Direct Profit. C&K's assertion is therefore tantamount to arguing that there was no evidence that Expedited owed revenue to C&K beyond the amounts Expedited admitted to collecting—an argument fundamentally inconsistent with any claim to the uncollected $76,720.60. Because C&K abandoned this argument by making contradictory assertions about this evidence, and by failing

8

to raise this as an issue for trial, C&K has waived the argument that Expedited owes it any revenue beyond the $356,839.50.

C&K contends that the court should nevertheless consider this claim for several reasons: (1) the trial issues "were limited by the Court" (C&K NuCo's Reply Mem. in Supp. of Mot. to Alter or Amend J. ("C&K Reply") [178] at 2), (2) whether Expedited received all or part of the $76,720.60 was never litigated, (3) Expedited has no evidence that it did not receive the $74,928.60, and (4) Expedited would doubly recover if it kept this revenue. The court finds none of these arguments persuasive.

First, as noted above, C&K had the opportunity to identify the issues for trial in the proposed pretrial order. The court identified the dispute about using billed or collected revenue for calculating profit based on C&K's second summary judgment motion, but if C&K believed there were other issues, it could have and should have identified those issues in the proposed pre-trial order. A trial is meant to resolve *all* of the remaining issues of fact. C&K contends that it had no opportunity to raise this issue at trial, because after the verdict, the court stated that the "ship had sailed" on the amounts that each party owed the other in load revenue. (C&K Reply 2–3.) The ship had indeed sailed at that point; the court entered two lengthy written opinions and conducted a trial on the one issue it perceived as remaining.

Second, C&K complains that the issue of the disputed $76,720.60 was never litigated and explains that it did not seek summary judgment on that sum because Expedited disputed having received it. But that is precisely why C&K should have raised it as an issue at trial. C&K did not ask the court to adjudicate this claim for additional revenue, a claim which, as noted, would have defeated C&K's defense to the claim for a Purchase Price Adjustment. Moreover, C&K cannot claim that summary judgment was inappropriate at that time, while now advocating that the court award C&K an extra $74,928.60 based solely on documentary evidence that Expedited has not had the opportunity to contest. If the claim for $76,720.60 could not support summary judgment, then the court cannot now order the requested relief in a Rule 59 motion.

9

Third, C&K argues that while it has presented some evidence, attached to Hardy's affidavit, purporting to show that Expedited received these checks, Expedited "has no evidence to dispute that it received" the $74,928.60. (C&K Reply 5 (emphasis removed).) If C&K had presented this evidence on summary judgment or at trial, and Expedited had not disputed it, then C&K would be correct. But Rule 59(e) motion is not the forum to litigate factual issues that could have been, but were not, presented at trial.[5] Finally, C&K relatedly argues that it would be unfair to count the $74,928.60 as revenue for C&K when calculating the Purchase Price Adjustment, but allow Expedited to retain that revenue. But this argument is premised on the conclusion that Expedited has, in fact, received this post-closing revenue, a matter which has not been litigated and is not affected by the court's conclusion at trial, which concerned only the Purchase Price Adjustment, not the load revenue. C&K asserts that Expedited has presented no evidence to the contrary, but this would be relevant only if the issue were squarely presented at summary judgment or at trial.

C&K's motion to alter or amend the judgment to include a finding that Expedited received an additional $74,928.60 in post-closing revenue is denied.

## II. Pre-Judgment Interest

Both parties also seek pre-judgment interest on the amounts the court determined they were entitled to under the APA. Under Illinois law, creditors are entitled to 5% annual interest "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing[.]"[6] 815 ILCS 205/2. An award of interest "is proper if the amount is due in the sense

---

[5] Expedited also argues that the evidence should not be considered because it is hearsay and because it was not produced in discovery. While these arguments appear to have merit, *see Tribble v. Evangelides,* 670 F.3d 753, 760 (7th Cir. 2012), as amended (Feb. 2, 2012) (reversing district court's admission of evidence that was not properly disclosed); *Loggerhead Tools, LLC v. Sears Holdings Corp.*, No. 12-CV-9033, 2016 WL 5080034, at *1–2 (N.D. Ill. Sept. 20, 2016) (excluding documents from trial that were not timely produced); FED. R. EVID. 803(6), the court need not address them.

[6] Though courts often consider an award of pre-judgment interest to be discretionary, it is unclear whether this is true here. *See Bank of Chicago v. Park Nat. Bank*,

that a debtor-creditor relationship has come into being and if the amount due is fixed or readily ascertainable by calculation or computation." *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1156–57 (7th Cir. 1989) (citing *Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 135 Ill. App. 3d 477, 485, 481 N.E.2d 1025, 1031 (1st Dist. 1985)). C&K has requested pre-judgment interest for the post-closing revenue that Expedited collected, though that amount was offset by C&K's owing a greater amount to Expedited. Expedited contends that it, too, is entitled to interest. Both parties challenge the other's entitlement to interest, and the court sustains both sides' objections, for the reasons explained here.

As C&K sees things, Expedited is not entitled to interest because its Rule 59(e) motion to alter or amend the judgment is untimely. A motion to alter the judgment must be filed within 28 days after the entry of judgment. FED. R. CIV. P. 59(e). This time limit is "unyielding" and courts may not extend it. *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666–67 (7th Cir. 2014). The court entered judgment on December 15, 2016, and set a deadline of January 20, 2017 to file post-trial motions. (Order [165] at 3, Dec. 15, 2016.) Expedited filed its motion on January 20, but according to C&K, this was too late, and the court may not consider it.

But, "[w]hen a motion is filed more than 28 days after the entry of judgment . . . [the court] treat[s] it as a Rule 60(b) motion[,]" even if the movant calls it a Rule 59(e) motion. *Banks*, 750 F.3d at 666; *see Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995) ("The time of a motion's service controls whether a motion challenging a judgment is a 60(b) or a 59(e) motion."). Rule 60(b) allows relief from judgment for "mistake, inadvertence, surprise, or excusable neglect[,]" or "any other reason that justifies relief." FED. R. CIV. P. 60(b). Expedited's motion was filed more than 28 days after entry of judgment, but within the time

---

277 Ill. App. 3d 167, 173, 660 N.E.2d 19, 23 (1st Dist. 1995) ("The decision to allow statutory interest lies within the sound discretion of the circuit court."); *but see Chandra v. Chandra*, 2016 IL App (1st) 143858, ¶ 50, 53 N.E.3d 186, 206 ("[I]f [the] qualifications are met, prejudgment interest is statutorily mandated."); *Milligan v. Gorman*, 348 Ill. App. 3d 411, 416, 810 N.E.2d 537, 541 (1st Dist. 2004) ("But the Act mandates prejudgment interest, as a matter of right, when the creditor seeks payment of a fixed sum on an instrument of writing.")

11

period set by the court. In *Piamco, Inc. v. Shell Oil Co.*, No. 84 C 2569, 1985 WL 2478, at *2 (N.D. Ill. Sept. 10, 1985), *aff'd*, 799 F.2d 262 (7th Cir. 1986), similarly, the court set a post-judgment motion deadline beyond the Rule 59(e) time limit. When the plaintiff moved for pre-judgment interest--after the Rule 59(e) deadline, but before the deadline set by the court--the, the court construed it as a Rule 60(b) motion and granted it. The plaintiff's late filing was a function of "excusable neglect" based on the party's "obvious reliance" on the court's order. *Id.* Expedited similarly will not be penalized for reliance on the court's order—particularly as C&K itself proposed the deadline set by the court. (Trial Tr. vol. 2, 261:4–8.)

Expedited argues that C&K is not entitled to interest because C&K did not win any money award; the court entered judgment for Expedited in the net amount of recovery: $100,876.14. But the amounts owed in this case are owed under the APA, not the court's judgment. Put another way, if Expedited delayed paying C&K, but ultimately paid C&K even without litigation, Expedited would owe C&K interest because the APA is an "instrument of writing" under the statute. *See Mut. Serv. Cas. Ins. Co.* v. *Elizabeth State Bank*, 265 F.3d 601, 629 (7th Cir. 2001) (Illinois courts have deemed contracts to be written instruments under the statute); *Fabe v. Facer Ins. Agency, Inc.*, 773 F.2d 142, 146 (7th Cir. 1985) ("A written contract is a 'written instrument' . . . if it contains some price provisions so that the amount due under the contract will be fixed or determinable, and . . . a debtor-creditor relationship has come into being."). The court found at summary judgment that Expedited owes C&K $356,839.50 under the APA.[7]

At first glance, therefore, both parties would appear to be entitled to pre-judgment interest under the APA; the court could calculate the interest owed to each party, and award the

---

[7] Expedited also argues that the court should deny C&K interest, because the interest to C&K would be offset by the interest to Expedited. But this is a reason to award interest to (1) neither party or (2) both parties, and to allow Expedited to recover the net interest, much as it was awarded the net recovery of C&K's and its own awards after trial. It does not justify denying interest to C&K while awarding it to Expedited.

12

net amount of interest to the party whose interest is higher. But the statute requires that interest accrue after the amounts become "due." 815 ILCS 205/2; *cf. E. M. Melahn Const. Co. v. Vill. of Carpentersville*, 100 Ill. App. 3d 544, 551, 427 N.E.2d 181, 187 (1981) ("[W]here there are a number of dates from which interest could be said to have accrued, this court has sought to find the most equitable date. The important date . . . is when the money actually became due without regard to . . . a demand for payment.") (internal citations omitted).

When the due date under an agreement is uncertain, an interest award cannot be calculated. *See Adams v. Am. Int'l Grp., Inc.*, 339 Ill. App. 3d 669, 674, 791 N.E.2d 26, 30 (1st Dist. 2003) (written document did not support interest award because it provided for payment in two installments, but did not contain a due date). In *Adams*, the court rejected, as speculative, the plaintiff's arguments about when certain installment payments were due. True, the court could recognize an "inherent due date," if the evidence makes that date clear. *See PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004) (when agreement stated that defendant had to give plaintiff payments from a common debtor while debtor was in default, the time of default was "an inherent due date," so court could calculate interest even though there was no due date in the agreement); *Reserve Ins. Co. v. Gen. Ins. Co. of Am.*, 77 Ill. App. 3d 272, 283, 395 N.E.2d 933, 940–41 (1st Dist. 1979); *cf. S. Bend Lathe, Inc. v. Amsted Indus., Inc.*, 925 F.2d 1043, 1049 (7th Cir. 1991) (calculating interest from dates that plaintiff incurred expenses that defendant was obligated to indemnify).[8]

---

[8] Courts have also taken other approaches less recently. *See Schulze & Burch Biscuit Co. v. Am. Prot. Ins. Co.*, 96 Ill. App. 3d 350, 353, 421 N.E.2d 331, 333 (1st Dist. 1981) (holding that interest may be allowed "after the lapse of a reasonable time for paying the amount due" and awarding interest on amount due under insurance policy from date of defendant's denial of payment, more than 60 days after date of loss, because "60 days following the date of loss is a reasonable amount of time from which to allow pre-judgment interest."); *Haas v. Cravatta*, 71 Ill. App. 3d 325, 332, 389 N.E.2d 226, 231 (2d Dist. 1979) (written memo was silent on when money was due and court adopted the date that plaintiff testified was the due date, when defendant did not "provide[] [the court] with an alternate due date.").

In this case, the court concludes that the APA does not set an ascertainable due date for the exchange of the load revenues. The APA states simply that the parties "shall be entitled" to load revenues from their respective time periods. (APA § 5.03.) The relevant section provides:

> In addition, the parties acknowledge the possibility that either party may originally collect funds to which the other is entitled, whether because such payment is misdirected or otherwise. Accordingly, the parties covenant to work in good faith to timely account for and properly direct payments owing to the other, and agree that any funds collected on behalf of the other party shall be held in trust in the interim until remitted to the other party.

(*Id.*) This "good faith" language does not establish a due date. The parties propose their own resolutions to the question which are equally unsatisfying. C&K calculates interest on its owed load revenue using the date of the original complaint as the date the payments were "due" (C&K Mem. 5)—a resolution that has no basis in the APA. Expedited calculates the interest using the date that C&K purportedly received each payment. (Def.'s Mem. in Supp. of Cross-Mot. to Amend J. [172] at 2.) But this posits that payments of load revenue are "due" the day that the party receives them; this is both impractical and lacks support in the APA.

Unlike cases where the court found an "inherent" due date, there is no provision in the APA that payments are due upon demand, delivery of some good or service, or another similar provision. There is also no evidence that the parties understood that the load revenue would be due at a certain time. *See, e.g., Bandag, Inc. v. Nat'l Acceptance Co. of Am.*, 855 F.2d 491, 492, 496 (7th Cir. 1988) (interest accrued from date of demand for payment because agreement provided that amounts were due upon demand for payment); *Design Synergies Ltd. v. Rohrman*, 2017 IL App (1st) 152846-U, ¶ 78 (rejecting defendant's argument that no interest was due because the agreement lacked a specific date when "the parties understood these amounts to be already due as of March 12, 2008"); *Morrissey v. Harte*, 2014 IL App (1st) 113643-U, ¶ 23 (written agreement provided that amount would be immediately payable on the occurrence of an enumerated event). Accordingly, the condition that interest be "readily ascertainable" is not met, and the court declines to award interest on the load revenue.

Importantly, this also means that the court will not award interest on the Purchase Price Adjustment. If it did, Expedited would be awarded interest on the Purchase Price Adjustment alone ($329,107.36), which is greater than its net award ($100,876.14). The court's determination in this regard is buttressed by the fact that the due date for the Purchase Price Adjustment is also not entirely certain. The APA requires C&K to prepare its calculation of the Aggregate Direct Profit and the Purchase Price Adjustment "[n]ot later than 45 calendar days after the end of the final Reporting Month during the Adjustment Period." (APA § 2.03(b), Ex. A o Pl.'s Mem. in Supp. of Mot. for Summ. J. [122-1].) The "Adjustment Period" is the first 100 days after closing. (*Id.* at § 2.03(a).) A "Reporting Month" is a "full calendar month during the Adjustment Period." (*Id.*) Expedited then would have 15 days to review the calculation, and C&K would have 15 days to make a payment. (*Id.* at § 2.03(b).) But the agreement also allows Expedited to object to the calculations, and for the parties to arbitrate any disputes over calculating the Purchase Price Adjustment. (*Id.* at 2.03(c).) Thus, it is uncertain when the Purchase Price Adjustment would be "due" under the APA—if the calculation is disputed, the agreement appears to make the amount "due" on a later date than if there were no dispute. The court accordingly declines to award interest on the Purchase Price Adjustment. *But see Marvel Eng'g Co. v. Commercial Union Ins. Co.*, 118 Ill. App. 3d 844, 853, 455 N.E.2d 545, 552 (1983) (insurance policy required payment 60 days after proof of loss and insurer's ascertainment of the loss; because insurer was responsible for delay in ascertainment, it waived argument that payment was not due until loss was ascertained, more than 60 days after proof of loss). The court thus declines to award either party pre-judgment interest.

## CONCLUSION

For the reasons stated above, C&K's motion to alter or amend the judgment [167] and Expedited's motion to alter or amend the judgment [171] are denied.

ENTER:

Dated: July 31, 2017

REBECCA R. PALLMEYER
United States District Judge